**NOT FOR PUBLICATION**

<u>**UNITED STATES DISTRICT COURT**</u>
<u>**FOR THE DISTRICT OF NEW JERSEY**</u>

| | |
|---|---|
| COMCAST CABLE COMMUNICATIONS LLC, | |
| Plaintiff, | Civil Action No. 06-cv-3273 (PGS) |
| v. | |
| VALERIO LOPES | **OPINION** |
| Defendant. | |

**<u>SHERIDAN, U.S.D.J.</u>**

This matter comes before the Court upon a motion by Plaintiff Comcast Cable Communications ("Comcast") for entry of a default judgment against Defendant Valerio Lopes ("defendant" or "Lopes"), pursuant to Federal Rule of Civil Procedure 55(b)(2), for failure to appear, answer, or otherwise defend in this matter. For the reasons set forth below, the Court will grant Comcast's motion.

I.

Comcast operates cable television systems, providing programming services to paying consumers. Comcast subscribers purchase "Basic" or "Standard" tier packages for a set monthly rate and can then add various "Premium" programming services for additional monthly charges of $7.00 to $13.00 per service. Comcast also offers "pay-per-view" programming, allowing subscribers to purchase individual movies, sporting events, or other entertainment for a "per event" fee, ranging from $4.00 to $49.00, in addition to the cost of the subscriber's regular monthly subscription.

Comcast protects its services from unauthorized reception by encoding, or "scrambling," its

proprietary signals. Comcast provides subscribers with a decoding device that unscrambles the appropriate purchased services, enabling customers to view the programs for which they paid. Programming that the customer has not purchased remains scrambled and unviewable on the subscriber's television set.

According to Comcast, defendant purchased two "pirate" converter-decoder devices on November 19, 2001, from Modern Electronics, Inc., to intercept Comcast's cable programming without paying for the service. Comcast filed the above-captioned suit against defendant on July 19, 2006, seeking an injunction and monetary damages pursuant to the Communications Act of 1934, as amended, 47 U.S.C. § 553. Lopes was served with the Summons and Complaint at his residence on August 13, 2006, however, he has not appeared or otherwise responded to Comcast's Complaint.

Upon request by Comcast, the Clerk of the Court entered Default on September 11, 2006. Comcast now moves for entry of judgment, including an award of statutory damages in the amount of $250.00 to $10,000.00 pursuant to § 553(c)(3)(A)(ii), costs in the amount of $418.24, attorneys' fees in the amount of $2,242.50, and $45.65 in pre-judgment interest. Comcast also seeks to enjoin Defendant from committing any further violations of § 553(a)(1).

II.

Federal Rule of Civil Procedure 55(b)(2) authorizes courts to enter a default judgment against a properly served defendant who fails to file a timely responsive pleading. *Anchorage Assoc. v. Virgin Is. Bd. of Tax Rev.*, 922 F.2d 168, 177 n. 9 (3d Cir.1990) ("When a defendant fails to appear..., the district court or its clerk is authorized to enter a default judgment based solely on the fact that the default has occurred."). The entry of a default judgment is largely a matter of judicial discretion, although the Third Circuit has emphasized that such "discretion is not without limits, however, and we have repeatedly stated our preference that cases be disposed of on the merits

whenever practicable." *Hritz v. Woma Corp.*, 732 F.2d 1178, 1181 (3d Cir.1984) (citations omitted).

Although the Court should accept as true the well-pleaded factual allegations of the Complaint, the Court need not accept the moving party's legal conclusions or allegations relating to the amount of damages. *Comdyne I, Inc. v. Corbin*, 908 F.2d 1142, 1149 (3d Cir .1990); *Directv, Inc. v. Asher*, 2006 WL 680533, at *1 (D.N.J. Mar. 14, 2006) (citing *Charles A. Wright, Arthur R. Miller & Mary Kay Kane*, 10A Federal Practice and Procedure § 2688, at 58-59, 63 (3d ed.1998)). Consequently, before granting a default judgment, the Court must first ascertain whether "the unchallenged facts constitute a legitimate cause of action, since a party in default does not admit mere conclusions of law." *Asher*, 2006 WL 680533, at *1 (citing *Wright, Miller, & Kane*, § 2688, at 63); *Directv, Inc. v. Croce*, 332 F.Supp.2d 715, 717 (D.N.J.2004)).

III.

Section 553(a)(1) provides that "no person shall intercept or receive or assist in intercepting or receiving any communications service offered over a cable system, unless specifically authorized to do so by a cable operator or as may otherwise be specifically authorized by law." 47 U.S.C. § 553(a)(1). Any person aggrieved by a violation of § 553(a)(1) may bring a civil action in federal district court. 47 U.S.C. § 553(c)(1).

In the event of a violation, the district court may (1) "grant temporary or final injunctions on such terms as it may deem reasonable to prevent or restrain violations of [section 553(a)(1) ]"; (2) "award damages"; and/or (3) "direct the recovery of full costs, including awarding reasonable attorneys' fees to an aggrieved party who prevails." 47 U.S.C. § 553(c)(2). The court must calculate damages using one of two methods: the prevailing party may recover its actual damages plus any profits of the violator that are attributable to the violation of § 553(a), or the prevailing party may recover an award of statutory damages for all violations involved in the action, in a sum of not less

than $250.00 and not more than $10,000.00, as the Court considers just. 47 U.S.C. § 553(c)(3)(A)(i-ii).

Before awarding a default judgment, the Court must determine whether the moving party's complaint establishes a legitimate cause of action. *Asher*, 2006 WL 680533, at *1 (citing *Wright, Miller, & Kane*, § 2688, at 63); *Croce*, 332 F.Supp.2d at 717 (D.N.J.2004)). In this instance, plaintiff alleges that on or about November 19, 2001, defendant purchased two "pirate" cable television decoding devices from Modern Electronics, Inc., which would enable the interception of Comcast's private telecommunication signal. According to Comcast, defendant has subsequently engaged in the unauthorized interception and reception of Comcast's standard, premium, and pay-per-view programming without paying Comcast for the use of these services.

Accepting these allegations as true, the Court finds that defendant has indeed violated the prohibitions of § 553 by intercepting "communications service[s] offered over a cable system" without authorization. See 47 U.S.C. § 553(a)(1). Plaintiff's Complaint has, therefore, set forth a claim upon which relief may be granted.

Before entering a default judgment, however, the Court must also consider three factors: (1) whether the plaintiff will be prejudiced if default is not granted, (2) whether the defendant has a meritorious defense, and (3) whether the defendant's delay was the result of culpable misconduct. *Carpenters Health & Welfare Fund v. Naglak Design*, 1995 WL 20848, *2 (E.D.Pa.1995) (citing *Emcasco Ins. Co. v. Sambrick*, 834 F.2d 71, 73 (3d Cir.1987)).

Although these factors are typically more pertinent where the plaintiff has appeared to contest the entry of default, the factors clearly weigh in Comcast's favor in this instance. Because defendant has not filed any responsive pleadings or otherwise shown cause why default should not be granted, the Court is "not in a position to judge whether the Defendant has a meritorious defense or whether

any delay was the result of culpable misconduct." *Id.* Moreover, defendant's failure to appear has deprived Comcast of any other "means of vindicating its claim," and Comcast will be prejudiced if the default is not granted. See *Asher*, 2006 WL 680533, *2 (granting default judgment where defendant "has not responded in any fashion," "has not asserted any meritorious defense," and has not "offered any excusable reason for his default"). Accordingly, Comcast is entitled to a default judgment for defendant's failure to appear in this action.

IV.

Consistent with § 553(c)(3)(a), this Court can award either the actual damages caused by a violation of § 553(a) or statutory damages between $250.00 and $10,000.00, as the Court considers just. However, because the "pirate" devices were designed to defeat Comcast's security measures, Comcast has no means of ascertaining the services defendant accessed without authorization. See *Comcast Cable Comm. v. Cabrera*, 2005 WL 3544698, at *2 (D.N.J. Dec. 28, 2005); *Cablevison Sys. New York City Corp. v. Lokshin*, 980 F.Supp. 107, 112 (E.D.N.Y.1997). Because Comcast cannot accurately calculate the actual damages incurred by defendant's use of the unauthorized decoder devices, Comcast requests a full award of $10,000.00 in statutory rather than actual damages.

To calculate a "just" award of statutory damages under § 553(c)(3)(A)(ii), most courts consider the value of the services to which the defendant had unauthorized access. *Cabrera*, 2005 WL 3544698, at *2 (awarding the $10,000.00 maximum damages because defendant "could have illegally sustained all premium channels and pay-per-view channels offered by Plaintiff, totaling $5,000 per month"). Some courts have concluded that "statutory damages should be 'as reasonable an estimate of actual damages as the facts...allow,' not greater." *Charter Commc'n Entm't I, LLC v. Burdulis*, 367 F.Supp.2d 16, 26 (D.Mass.2005) (quoting *Comcast of Mass. I, Inc. v. Naranjo*, 303

F.Supp.2d 43 (D.Mass.2004)). Other Courts have added a punitive element to the damages calculation. *Comcast Cable Commc'n v. DeRosa*, Civ. No. 04-4644, (Order filed Apr. 18, 2005) (trebling the estimate of actual damages); *Asher*, 2006 WL 680533, *3 (D.N.J.2006) (awarding $10,000.00 "to deter similar conduct" for violation of 47 U.S.C. § 605, a statute comparable to § 553).

Courts that opt to estimate actual damages must make several assumptions, including the value of pay-per-view programming intercepted with the pirated device. See e.g., *Cablevision Systems New York City Corp. v. Rosa*, 2002 WL 1446942, at *5 (S.D.N.Y.2002) (estimating that defendant viewed one special event and seven pay-per-view programs per month given the "limitations that taste, viewing preference, programming selection and time placed on [defendant's] viewing"). Thus, in *Time Warner Cable of New York City v. Verma*, 2006 WL 1804565 (E.D.N.Y.2006), for example, the court approximated damages in the amount of $156.00 per month: $56.00 attributable to the difference between the defendant's level of service and cost of a premium level of service and $100.00 attributable to estimated pay-per-view programming. The court then multiplied this amount by the sixty months between the purchase of the device and the filing of the complaint for a total of $9,360.00. In *Burdulis*, 367 F.Supp.2d at 29, on the other hand, the court estimated that the defendant had viewed "ten pay-per-view movies per month at $3.99 each and four additional pay-per-view movies per month at $6.99 each, for a total of $3,257.28 in illegally intercepted pay-per-view programming for the entire 48-month period." *Id.* (finding a total amount of $5,177.28 in damages).

In support of a $10,000.00 damages award, Comcast submits that the estimated monthly loss attributable to a pirate descrambling device is "approximately $2,500 per month per home based on average availability of premium and pay-per-view services," since such services are available 24

hours per day and can cost up to $49.99 for pay-per-view selections and $13.00 for premium services. (McGinnis Cert., filed Oct. 17, 2006, ¶ 19).

Comcast's arguments notwithstanding, this Court, in agreement in other Courts, find it difficult to believe that an individual could incur a bill of the amount suggested by plaintiff. See *Comcast Cable Communications v. Weigel*, 2006 WL 2460652, at *4 (D.N.J. Aug. 22, 2006) ("it is difficult to fathom how an individual might reasonably consume $5,000.00 worth of cable television services on a monthly basis"); *Burdulis*, 367 F.Supp.2d at 27 (observing, "nor do I find it plausible that a defendant would order pay-per-view services 24 hours a day, every day of the month.... Those who steal cable television presumably must sleep, eat, bathe, go to work, shop, and otherwise go about their daily lives").

On the other hand, it is defendant's failure to appear or participate in the litigation that renders it impossible to quantify the total amount of damages. *Cabrera*, 2005 WL 3544698, at *2; *Directv, Inc. v. Gendrachi*, 2005 WL 350952, at *4 (D.N.J. Feb. 14, 2005). Moreover, courts in this Circuit consistently increase the damages award for deterrent or punitive purposes. *Cabrera*, 2005 WL 3544698, at *2 (noting that $10,000.00 is an appropriate amount to "serve as a deterrence"); *Asher*, 2006 WL 680533, *3 (reaching same conclusion under 47 U.S.C. § 605); *DeRosa*, Civ. No. 04-4644, (Order filed Apr. 18, 2005) (awarding $9,622.80 in damages).

In this instance, defendant has possessed, not only one device, but two devices since November 19, 2001, for a total of fifty-seven months prior to the filing of the Complaint. This time period, along with the fact that defendant possessed multiple "pirate" converter-decoder devices suggests that a full award of $10,000.00 would be proper to compensate and deter.

V.

Section 553 also permits the Court to award costs and reasonable attorneys' fees. 47 U.S.C.

§ 553(c)(2)(C). To calculate a fee award, the Court multiplies the number of hours reasonably expended by a reasonable hourly rate. See *Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983). In making this lodestar calculation, the district court should eliminate any hours that were not reasonably expended, such as hours that appear "excessive, redundant, or otherwise unnecessary." See *id.* at 434. Comcast requests $2,242.50 in attorney fees for litigation of the above-captioned matter. As certified by counsel for Comcast, Francis X. Riley III, Esquire, Comcast allocated its efforts between two attorneys. A review of the itemized bill indicates that these hours are not "excessive, redundant, or otherwise unnecessary" on their face. Accordingly, because Comcast's counsel has established the reasonableness of these hours and defendant has not appeared or otherwise contested this request, Comcast is entitled to attorneys' fees in the amount of $2,242.50. See *Hensley*, 461 U.S. at 433 (1983); *Washington v. Philadelphia County Ct. of C.P.*, 89 F.3d 1031, 1035 (3d Cir.1996).

In terms of litigation costs, plaintiff incurred $350.00 in filing fees and $68.24 in process service fees and other costs for a total of $418.24. Because these costs are properly reimbursable, the Court will award the requested $418.24 in litigation costs. See 47 U.S.C. § 553(c)(2)(C); *Cabrera*, 2005 WL 3544698, at *3.

Under New Jersey Court Rules 4:42-11b pre-judgment interest may be awarded to tort recoveries. In *Prostar v. Massachi*, the Fifth Circuit held that cable piracy was analogous to the tort of conversion. 239 F.3d 669 (5th Cir.2001). The Court has discretion to compensate a plaintiff for a defendant's use of its money after the cause of action accrued but before the judgment was entered. *Hurely v. Atlantic City Police*, 933 F.Supp. 396, 398 (D.N.J.1996). This Court awards pre-judgment interest to plaintiff in the amount of $45.65.

## VI.

In addition to providing for fees and costs, § 553(c) authorizes courts to issue preliminary or final injunctions as necessary to restrain the defendant from committing any further violations of the statute. 47 U.S.C. § 553(c)(2)(A). Accordingly, this Court permanently enjoins defendant from committing or assisting in the commission of any further violation of the Communications Act. *Cabrera*, 2005 WL 3544698, at *3.

## VII.

For the foregoing reasons, the Court will enter default judgment against the defendant in the amount of $12,706.39, representing $10,000.00 in statutory damages, $2,242.50 in attorneys' fees, $418.24 in costs, and $45.65 in pre-judgment interest. The Court will also enjoin the defendant from committing or assisting in the commission of any further violations of § 553(a)(1).

February 23, 2006

PETER G. SHERIDAN, U.S.D.J.